```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

            - against -                    MEMORANDUM AND ORDER

CARLOS ESTEVEZ GONZALEZ,                   19 Cr. 123-2 (NRB)

                Defendant.
---------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Defendant Carlos Estevez Gonzalez ("defendant") has filed five pretrial motions. First, he moves to dismiss Count Four of the superseding indictment, which alleges that he possessed, and aided and abetted the possession of, a firearm in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c). Second, he moves to sever his trial from his co-defendant's trial. Third, he moves for an order directing the Government to disclose immediately the evidence that it intends to introduce at trial under Federal Rule of Evidence 404(b). Fourth, defendant moves for an order directing the Government's agents to preserve their rough notes and draft reports, and directing the Government to provide those documents to the Court so that it can determine whether the Government is required to disclose any of them to defendant. Fifth, defendant requests an order permitting him to file additional motions should the disclosure of additional facts during discovery render such motions necessary. Save for

one issue raised in defendant's first pretrial motion, on which issue the Court defers ruling, the Court denies each of defendant's motions for the reasons stated herein.

## BACKGROUND

On November 18, 2019, a grand jury returned a superseding indictment (the "Indictment") charging defendant and Jackson Hernandez-Lopez (together, "defendants") each with one count of conspiring to distribute heroin in violation of 21 U.S.C. § 846 ("Count One"), one count of conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 ("Count Two"), one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951 ("Count Three"), and one count of possessing a firearm during and in relation to the drug conspiracy charged in Count One and the Hobbs Act robbery charged in Count Three in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)—(iii) and 924(c)(2) ("Count Four"). The Indictment further alleged that the firearms in Count Four "were brandished and discharged." The Indictment also charged Hernandez-Lopez with one count of possessing ammunition after being convicted of a crime punishable by imprisonment for more than one year in violation of 18 U.S.C. § 922(g)(1) ("Count Five").

The Government proffers that the evidence at trial will establish the following events. Oscar Rizik was a drug dealer

from whom approximately nine kilograms of heroin had been stolen. Rizik, defendants, and several other men believed that another drug dealer (the "victim") had stolen the heroin, and they agreed to recover it by robbing the victim. Shortly after the heroin was stolen, but before the conspirators could recover it, Rizik died in a motorcycle accident.

The day after Rizik died, the conspirators decided to execute their plan to rob the victim of the stolen heroin. Several men, including defendant, got into an SUV, drove to where the victim and his girlfriend were outside on the street, jumped out of the SUV, and attacked the victim. Security camera footage shows the men kicking and punching the victim as they tried to drag him into the SUV. The victim eventually freed himself and ran up the street. Two of the conspirators, neither of whom was defendant, chased the victim up the street while brandishing handguns. After one of the two conspirators shot at the victim, the victim tripped and fell. Each of the two conspirators then shot once at the victim, with one of the shots hitting the victim in the leg. All of the conspirators then ran into the SUV, which drove away.

The Government expects the evidence at trial to include, among other things, security camera footage showing defendant with the conspirators in the area of the shooting just before it occurred,

security camera footage of the shooting, phone records demonstrating defendant's communications with the conspirators around the time of the shooting, and cell-site data establishing defendant's presence at, and flight from, the shooting.  The Government also expects multiple cooperating witnesses to testify about defendant's involvement in the agreement to rob the victim of the stolen heroin, and about his involvement in drug dealing.

**DISCUSSION**

**1. Motion to Dismiss Count Four of the Indictment**

Count Four of the Indictment charges defendant with possessing, and aiding and abetting the possession of, a firearm in furtherance of a crime of violence -- the Hobbs Act robbery charged in Count Three of the Indictment -- and a drug trafficking crime -- the narcotics conspiracy charged in Count One of the Indictment -- in violation of 18 U.S.C. § 924(c).  Defendant moves to dismiss Count Four on two grounds.  First, he argues that Hobbs Act robbery is not a "crime of violence" within the meaning of 18 U.S.C. § 924(c).  Second, he argues that even if Hobbs Act robbery is a "crime of violence" under that statute, attempted Hobbs Act robbery is not.  While the Court rejects defendant's first argument, it defers ruling on the second.

**A. Legal Standards**

**i. 18 U.S.C. § 924(c)**

Any defendant "who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be guilty of a crime. 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines the phrase "crime of violence" to mean any felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Subsection 924(c)(3)(A) is known as the "Force Clause," and Subsection 924(c)(3)(B) is known as the "Risk-of-Force Clause." The Supreme Court held that the Risk-of-Force Clause is unconstitutionally vague, and thus unenforceable, in United States v. Davis, 139 S. Ct. 2319 (2019).

"To determine whether an offense is a crime of violence, courts employ what has come to be known as the 'categorical approach.'" United States v. Hill, 890 F.3d 51, 55 (2d Cir. 2018), cert. denied, 139 S. Ct. 844 (2019) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)). "Under the categorical

approach, courts identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" Id. (quoting United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam)). "In doing so, courts 'look only to the statutory definitions -- i.e., the elements -- of the . . . offense, and not to the particular underlying facts.'" Id. (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)) (quotation marks, alterations, and emphasis omitted). "The reviewing court 'cannot go behind the offense as it was charged to reach its own determination as to whether the underlying facts' qualify the offense as . . . a crime of violence." Id. (quoting Ming Lam Sui v. INS, 250 F.3d 105, 117-18 (2d Cir. 2001)) (alteration omitted).

"Critically, the Supreme Court has made clear in employing the categorical approach that to show a predicate conviction is not a crime of violence 'requires more than the application of legal imagination to the . . . statute's language.'" Id. at 56 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)) (alteration omitted). Accordingly, "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence." Id. (quoting Duenas-Alvarez, 549 U.S. at 193). "To show that a particular reading of the statute is realistic, a

defendant 'must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'" Id. (quoting Duenas-Alvarez, 549 U.S. at 193). "To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy." Id. (citing Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013) (explaining that "focus on the minimum conduct criminalized by the statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting Duenas-Alvarez, 549 U.S. at 193))).

**ii. Hobbs Act Robbery**

Under the Hobbs Act, "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts . . . so to do" shall be guilty of a crime. 18 U.S.C. § 1951(a). "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future . . . ." 18 U.S.C. § 1951(b)(1).

**B. Hobbs Act Robbery is a Crime of Violence**

Defendant initially argued that the Court should dismiss Count Four of the Indictment on the ground that Hobbs Act robbery

is not a crime of violence under the categorical approach to the Force Clause.  However, after the Government pointed out in its opposition brief that the Second Circuit has already held that Hobbs Act robbery is such a crime, defendant "agree[d] that the Second Circuit has determined that substantive Hobbs Act robbery is a crime of violence under [the Force Clause]."  Reply at 3.  The Second Circuit's decision in Hill, which held "that Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another,'" conclusively established that Hobbs Act robbery is a crime of violence under the Force Clause, and is binding on this Court.  890 F.3d at 60 (quoting 18 U.S.C. § 924(c)(3)(A)).  Therefore, the Court rejects defendant's initial argument.

**C. Attempted Hobbs Act Robbery is a Crime of Violence**

Defendant argues that even though Hobbs Act robbery is a crime of violence under the Force Clause, attempted Hobbs Act robbery is not.  Whether attempted Hobbs Act robbery is a crime of violence under the Force Clause is currently before the Second Circuit in several pending appeals.  See, e.g., United States v. Nolan, Dkt. No. 16-3423 (argued Nov. 4, 2019); United States v. Collymore, Dkt. No. 19-596 (briefing completed Jan. 23, 2020); United States v. Morris, Dkt. No. 16-6 (briefing completed Feb. 28, 2020).  While

the vast majority of courts, including the only two courts of appeals, have that decided the question have concluded that attempted Hobbs Act robbery is a crime of violence under the Force Clause, a handful of recent decisions have concluded otherwise. Compare, e.g., United States v. St. Hubert, 909 F.3d 335, 351-53 (11th Cir. 2018) ("Like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force." (emphasis in original)) and Crowder v. United States, 16 Civ. 4403 (CM), 2019 WL 6170417, at *3 (S.D.N.Y. Nov. 20, 2019) ("Even if every individual act constituting an attempt to commit a crime of violence is not itself violent, a defendant who takes a 'substantial step' toward committing an inherently violent offense -- such as Hobbs Act robbery -- has at least 'attempted' or 'threatened' the use of force within the meaning of Section 924(c)(3)(A).") with, e.g., United States v. Cheese, 18 Cr. 33 (NGG), 2020 WL 705217, at *2-*4 (E.D.N.Y. Feb. 12, 2020) (notice of appeal filed March 12, 2020) ("Because a defendant who takes a substantial step in furtherance of Hobbs Act robbery can do so without the use, threatened use, or attempted use of force, attempted Hobbs Act robbery cannot be a crime of violence under the categorical analysis.").

The Court defers ruling on whether attempted Hobbs Act robbery is a crime of violence for three reasons. First, given that the issue is currently before the Second Circuit in multiple cases and given the impact of the ongoing COVID-19 pandemic on the district court's operations, there is a reasonable likelihood that the Second Circuit will resolve the issue before defendant's trial, which has not yet been scheduled. Second, even if attempted Hobbs Act robbery is not a crime of violence under the Force Clause, Count Four of the Indictment is also predicated on the drug conspiracy charged in Count One, which indisputably is a "drug trafficking crime," and thus potentially an independent basis for a conviction, under Section 924(c). And third, it is far from clear that the issue of whether an attempted Hobbs Act robbery is a crime of violence needs to be resolved prior to trial since the verdict form could be drafted in a manner designed to record the precise basis of the jury's verdict.

**2. Motion for Severance**

Defendant moves to sever his trial from that of his co-defendant, Lopez-Hernandez, on the ground that evidence admitted against Lopez-Hernandez could cause prejudicial spillover.

Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of . . . defendants in an indictment . . . appears to

prejudice a defendant . . . the court may . . . sever the defendants' trials . . . ." Fed. R. Crim. P. 14(a). Nonetheless, "'[t]here is a preference in the federal system for joint trials of defendants who are indicted together.'" United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." Id. "'It would impair both the efficiency and fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)).

Accordingly, "'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Rahman, 189 F.3d 88, 122 (2d Cir. 1999) (quoting Zafiro, 506 U.S. at 539). When determining whether

either of these risks are present, the Court must bear in mind that even "[w]hen the risk of prejudice is high . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. 539. "Whether to grant or deny a severance motion is committed to the sound discretion of the trial judge," and the Court's "exercise of that discretion is virtually unreviewable." Salameh, 152 F.3d at 115 (quotation marks omitted).

The Court concludes that severance of defendant's trial is unwarranted under these standards. Spillover prejudice "occurs in joint trials when proof inadmissible against a defendant becomes part of his trial solely due to the presence of co-defendants as to whom its admission is proper." Id. (citations omitted and emphasis added). However, evidence against Lopez-Hernandez is admissible against defendant because "[w]here a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." Id. at 111. While defendant does not specifically complain about prejudicial spillover from evidence admitted in support of Count Five of the Indictment, which charges only Lopez-Hernandez as a felon in possession of ammunition, the Court notes that evidence concerning

Lopez-Hernandez's possession of ammunition would be admissible as part of the evidence on the Hobbs Act robbery counts. Evidence of Lopez-Hernandez's prior felony conviction, meanwhile, would not have been admitted at the time the charges against defendant were presented to the jury. Consequently, defendant's protestation that evidence admitted against Lopez-Hernandez would cause prejudicial spillover "is unsupportable." Id. at 115. Moreover, while defendant complains that Hernandez-Lopez is more culpable than he, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (quotation marks omitted).

The Court also disagrees with defendant's contention that a limiting instruction could not cure any spillover prejudice that could result from a joint trial with Lopez-Hernandez. Courts presume that jurors obey limiting instructions. United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994). To rebut that presumption, there must be "an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." Id. (deeming the presumption rebutted where "it would be quixotic to expect the jurors to perform [the] mental acrobatics called for by the district judge."). Defendant

contends that if he is tried alongside Lopez-Hernandez, "[t]he irrelevant evidence" would be "so massive, so pervasive, and so prejudicial," that a juror could not distinguish the "infinitesimal fraction of the evidence relevant to [defendant's] charges . . . ." Def.'s Mem. at 27. This argument, however, is premised on defendant's mistaken belief that the evidence against Lopez-Hernandez would be irrelevant to, and thus inadmissible in support of, the charges against him, which is not so given that defendants are alleged to have participated in a common scheme. See supra at 12-13 (citing Salameh, 152 F.3d at 111).

The Court accordingly denies defendant's motion for severance.

**3. Motion for Immediate Disclosure of Rule 404(b) Evidence**

Defendant moves for an order directing the Government to disclose "immediately" any evidence it intends to introduce at trial under Federal Rule of Evidence 404(b). Def.'s Mem. at 29.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose," such as proving motive or intent. Fed. R. Evid. 404(b). "On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(2).

Rule 404(b)(2) "establishes no minimum time" for the Government to provide notice "because the evidence the [G]overnment wishes to offer may well change as the proof and possible defenses crystallize." United States v. Russo, 483 F.Supp. 2d 301, 309 (S.D.N.Y. 2007). Whether notice is reasonable therefore "depends on the circumstances of the case," United States v. Kevin, 97 Cr. 763 (JGK), 1999 WL 194749, at *13 (S.D.N.Y. Apr. 7, 1999), and "[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." United States v. Ojeikere, 299 F.Supp. 2d 254, 257 (S.D.N.Y. 2004).

Defendant's trial is not yet scheduled, and he offers no reason why reasonable notice requires that the Government disclose today the Rule 404(b) evidence that it intends to introduce at trial. Moreover, the Government has represented that it "will provide notice of any Rule 404(b) evidence reasonably in advance of trial, affording the defense adequate opportunity to challenge the admission of any such evidence." Opp. at 19. The Court will,

of course, set a pretrial schedule in advance of trial. Accordingly, defendant's motion for immediate disclosure of Rule 404(b) evidence is denied.

**4. Motion for Order Directing Government Agents to Preserve Rough Notes and Draft Reports**

Defendant moves for an order directing the Government's agents to preserve their rough notes and draft reports, and directing the Government to give those documents to the Court so that it can decide whether the Government is required to produce them to defendant under Federal Rule of Criminal Procedure 16, Brady v. Maryland, 373 U.S. 83 (1963), or the Jencks Act, 18 U.S.C. § 3500.

The Court denies defendant's motion. The Government has represented that "[t]o the extent that any notes or drafts constitute exculpatory information pursuant to Rule 16, or to Brady v. Maryland and its progeny, the Government has fully complied with its discovery obligations in this case, and will continue to do so." Opp. at 19. That representation satisfies the Government's present obligations under Rule 16 and Brady v. Maryland. See, e.g., United States v. Underwood, 04 Cr. 424 (RWS), 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005) ("The courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to Brady where the government has made

such good faith representations."). Moreover, the Government's representation that it "intends to make Section 3500 material available to the defense at a sufficient time before trial for the defense to make effective use of such material" meets the Government's present obligations under the Jencks Act. Opp. at 21. Finally, the Court will set a pretrial schedule in advance of trial that will address the production of Section 3500 material.

**5. Motion for Order Permitting Defendant to File Additional Motions**

Defendant's last motion is for an order permitting him to file future motions should the disclosure of additional facts during discovery render such motions appropriate. This motion is unnecessary, and the Court denies it without prejudice.

## CONCLUSION

While the Court defers ruling on whether attempted Hobbs Act robbery is a crime of violence under the Force Clause, it denies defendant's pretrial motions in all other respects. The Court directs the parties to appear for a status conference tentatively scheduled for June 30, 2020 at 12:30 p.m. in Courtroom 21A of the Daniel Patrick Moynihan United States Courthouse located at 500 Pearl Street, New York, New York 10007. The Court grants a continuance until that time on the ground that the ends of justice served by doing so outweigh the best interest of the public and

defendants in a speedy trial given the impact of the ongoing COVID-19 pandemic on the Court's operations, its interference with the attorney-client relationship, and public safety.  <u>See</u> 18 U.S.C. § 3161(h)(7)(A).  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 44, 49, and 52.

    **SO ORDERED.**

Dated:    New York, New York
           April 9, 2020

                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE